UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| CAROLYN JO HANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:19 CV 168 ACL |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

Plaintiff Carolyn Jo Hann brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Hann's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).  A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I.   Procedural History**

Hann filed her applications for benefits on May 15, 2017.  (Tr. 16, 244-51.)   She

claimed she became unable to work on July 14, 2014,[1] due to degenerative disc disease, arthritis, bulging discs in her neck, pulmonary embolism, deep vein thrombosis, high blood pressure, seizures, panic disorder, major depressive disorder, post-traumatic stress disorder ("PTSD"), and anxiety disorder.  (Tr. 272.)   Hann was 40 years of age at her alleged onset of disability date. Her application was denied initially.  (Tr. 16.)   Hann's claim was denied by an ALJ on April 2, 2019.  (Tr. 16-39.)   On September 8, 2019, the Appeals Council denied Hann's claim for review.  (Tr. 1-4.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Hann first argues that the ALJ erred "by not finding Claimant met a listing for spine disorders prior to the Claimant's back surgery of May 1st, 2018."  (Doc. 22 at p. 18.) Hann next argues that the ALJ erred by "not giving Claimant's treating physician's opinion any weight and by not adopting the treating physician's opinion as to Claimant's physical limitations."  *Id.* at p. 19.

## II.  The ALJ's Determination

The ALJ first found that Hann met the insured status requirements of the Social Security Act through September 30, 2017.  (Tr. 19.)   He stated that Hann has not engaged in substantial gainful activity since her alleged onset date of July 14, 2014.  *Id.*   In addition, the ALJ concluded that Hann had the following severe impairments: degenerative disc disease of the lumbar spine, seizure disorder, pulmonary emboli, obesity, major depressive disorder, unspecified anxiety disorder, panic disorder and PTSD.  *Id.*   The ALJ found that Hann did not

---

[1] Hann filed a prior application for benefits, which was denied by an ALJ on September 24, 2015. (Tr. 87-98.)   Hann did not request that the prior decision be reopened and the ALJ determined that *res judicata* applied to her claim prior to September 24, 2015.   (Tr. 16, 59.)

have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  *Id.*

As to Hann's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no climbing of ladders, ropes or scaffolds. Occasional climbing of ramps and stairs, balancing, kneeling, crouching and crawling, and stooping limited to forty-five degrees of flexion.  The claimant must avoid all concentrated exposure to hazards such as dangerous moving machinery and unprotected heights.  The claimant must be permitted to alternate positions between sitting and standing once per hour for two minutes at a time.  The claimant can understand and remember simple instructions and can attend to and carry out routine and repetitive tasks.  She can have occasional interaction with the public and coworkers.

(Tr. 21-22.)

The ALJ found that Hann was unable to perform any past relevant work, but was capable of performing other work existing in substantial numbers in the national economy.  (Tr. 30-31.) The ALJ therefore concluded that Hann was not under a disability, as defined in the Social Security Act, from July 14, 2014, through the date of the decision.  (Tr. 32.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on May 15, 2017, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on May 15, 2017, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 32.)

### III.   Applicable Law

**III.A.   Standard of Review**

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).   "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the

       claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.*, 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted).   The Court must also consider any evidence which fairly detracts from the Commissioner's decision.   *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999).   However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole.   *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)).   "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision."   *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in

several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. §§ 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the

medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience.   *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th

Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV.   Discussion

Hann argues that the ALJ erred in considering the listings and in evaluating the opinion of the treating physician.   The undersigned will discuss these claims in turn.

### 1.   Listing 1.04

Hann first argues that the ALJ erred by finding Hann did not meet Listing 1.04, the listing for disorders of the spine.

"To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment."  *Blackburn v. Colvin*, 461 F.3d 853, 858 (8th Cir. 2014).   "Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing."   *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011).   The claimant bears the burden of establishing that she meets all the criteria of the relevant listing.   *Blackburn*, 761 F.3d at 858.

Listing 1.04 is for "[d]isorders of the spine"—including herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and

vertebral fracture—"resulting in compromise of a nerve root... or the spinal cord." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.04. This compromise of the nerve root or spinal cord must be combined "with" one of three evidentiary components: (A) "evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and "if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)"; (B) "spinal arachnoiditis" that is "confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively,…"; or (C) "lumbar spinal stenosis resulting in pseudoclaudication" that is "established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively,…" *Id*. at § 1.04(A), (B), (C).

The ALJ stated that Hann's degenerative disc disease "fails to meet or medically equal Listing 1.04" because the record "fails to demonstrate a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising."  (Tr. 19.)  The ALJ also found that the evidence failed to establish spinal arachnoiditis or lumbar spinal stenosis with pseudoclaudication.  *Id*.  Further, the ALJ found that Hann's "back disorder has not resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)."  (Tr. 19.)  He noted that Hann had a normal gait throughout the record.  (Tr. 19-20.)

Hann argues that her back condition met Listing 1.04A prior to her May 1, 2018 back surgery.  Hann argues that the following evidence support the presence of nerve root compression: x-rays confirming degenerative disc disease and facet arthropathy (Tr. 1608,

1582); a November 2016 CT scan confirming spinal stenosis (Tr. 699); the treatment notes of Dr. Lori Moyers demonstrating pain radiating into both lower and upper extremities (Tr. 1588, 631, 782-83, 789-91, 1577-1580), limitation of motion of the spine and muscle spasms (Tr. 755, 764, 767-68, 782-83, 786-87, 803, 811, 1580), decreased tactile discrimination in the feet, and positive straight leg raising test (Tr. 1580); an October 2017 MRI confirming nerve root impingement at L4-L5 (Tr. 1041-1042); and Dr. Joel Ray's December 2017 diagnosis of lumbar stenosis with neurogenic claudication and listhesis at L4-L5 (Tr. 1189).

Defendant responds that the ALJ properly found that Hann did not meet or equal Listing 1.04A, because she did not consistently exhibit muscle atrophy with weakness and positive straight leg raising testing.   The undersigned agrees.

As the ALJ noted, examinations consistently revealed normal motor examinations, with full strength and no muscle atrophy.   (Tr. 24, 647, 651, 654, 660, 679-80, 743, 746, 752, 755, 758, 761, 764, 767, 770, 774, 776, 779, 787, 795, 799, 803, 807, 811, 815, 819, 823, 828, 832, 906, 1040, 1057, 1402, 1575, 1580.)   Hann's treating physician, Dr. Moyers, found that Hann did not have weakness, atrophy, or motor loss, but only exhibited muscle spasm in a Residual Functional Capacity Questionnaire.   (Tr. 1648.)

The ALJ acknowledged positive straight leg raise testing bilaterally at 40 degrees on December 4, 2017.   (Tr. 24, 1041.)   The record also reflects positive straight leg raise testing on August 1, 2017 (Tr. 1577) and May 1, 2018 (Tr. 906).   These records do not, however, indicate whether the testing was performed in the sitting or supine position, both of which are required under Listing 1.04A.   Further, Hann's straight leg raise testing was negative in September 2015 (Tr. 646), February 2016 (Tr. 746), March 2016 (Tr. 755), April 2016 (Tr. 758), May 2016 (Tr. 764), June 2016 (Tr. 768), July 2016 (Tr. 770, 774), August 2016 (Tr. 776), October 2016 (Tr.

783), November 2016 (Tr. 787, 795), January 2017 (Tr. 803), February 2017 (Tr. 807), March 2017 (Tr. 811, 816), April 2017 (Tr. 819), May 2017 (Tr. 828), June 2017 (Tr. 832), July 2017 (Tr. 1572), and August 2018 (Tr. 1403).   The few instances of positive straight- leg raising tests in unspecified positions do not satisfy the requirement of Listing 1.04A   *See Watson v. Colvin*, 2016 WL 7840709 at *6 (M.D. La. Dec. 22, 2016) ("A single instance of a positive straight leg raising test…[which] failed to indicate whether it was performed in both the seated and supine positions, is insufficient to satisfy Listing 1.04A") (compiling cases).

In sum, although Hann points to evidence of nerve root compression, the record does not demonstrate the presence of motor loss or positive straight leg raise testing in the seated and supine positions.   As such, this Court cannot say the ALJ erred in determining that Hann's impairments failed to meet the criteria specified in Listing 1.04A.  *See Vossen v. Astrue,* 612 F.3d 1011, 1015 (8th Cir. 2010) (substantial evidence supported ALJ's decision rejecting claimant's argument that impairments met Listing 1.04A where, despite claimant pointing to "records showing nerve root compression," the total record exhibited contrary evidence such as an MRI showing "no cord or nerve root impingement" and a neurological examination showing "normal" results); *Troupe v. Berryhill*, 2017 WL 4038146 at *4 (E.D. Mo. Sept. 13, 2017) (substantial evidence supported ALJ's determination that claimant's impairment did not meet Listing 1.04A where records on treatment success, severity, and duration did not favor such a finding).

### 2. Treating Physician Opinion

Hann next argues that the ALJ erred in failing to give treating physician Dr. Moyers'

opinion any weight.   She further argues that the ALJ erred in not adopting Dr. Moyers' opinion as to Hann's physical[2]  RFC.

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations."   20 C.F.R. § 404.1545(a).   "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."   *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001).   "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of h[er] limitations.'"   *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney v. Apfel*, 228 F.3d at 860, 863 (8th Cir. 2000)). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite her impairments.   *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995).   "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to establish his or her RFC."   *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).   The Eighth Circuit clarified in *Lauer* that "some medical evidence" must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.   245 F.3d at 704 (quoted cases omitted).   Thus, an ALJ is "required to consider at least some supporting evidence from a professional."   *Id.*   *See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ

---

[2]Hann does not challenge the ALJ's findings with regard to her mental impairments.   Rather, her claims only relate to her spinal impairment.   The undersigned will therefore focus the discussion on this impairment.

Page **12** of **19**

bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.").

Dr. Moyers completed a "Residual Functional Capacity Questionnaire: Lumbar Spine" on February 8, 2019.  (Tr. 1648-1651.)  Dr. Moyers indicated that Hann had pain in the lumbar spine and buttocks daily at a level of 6 out of 10, which worsens with prolonged sitting and standing.  (Tr. 1648.)  The only objective sign Dr. Moyers indicated Hann exhibited was muscle spasm.  *Id.*  Dr. Moyers expressed the opinion that Hann could sit for one hour and fifteen minutes before she needed to stand or walk, and sit a total of four hours in an eight-hour workday; stand for an hour and twenty minutes before needing to sit or lie down, and stand or walk a total of less than two hours in an eight-hour workday; could rarely lift amounts under ten pounds and could never lift ten pounds or more; and could rarely twist, stoop, crouch, and climb. (Tr. 1649-1650.)  Dr. Moyers found that Hann's pain would frequently interfere with the attention and concentration necessary to perform simple work tasks; and she was capable of only low stress jobs.  (Tr. 1649.)  She indicated that Hann was taking medications with side effects of sedation and incoordination, which may affect her ability to work.  *Id.*  Dr. Moyers found that Hann required a job that allows her to change between sitting, standing, and walking at will, as well as hourly unscheduled ten-minute breaks.  (Tr. 1650.)  Finally, Dr. Moyers indicated that Hann was likely to be absent from work as a result of her impairments about four days per month.  (Tr. 1651.)

The ALJ found that Dr. Moyers' opinion was "unpersuasive."  (Tr. 29.)  He stated that Dr. Moyers' list of Hann's limitations did not include an explanation that "reconciles the discrepancies between the clinical findings and the opinion, or that otherwise creates a logical bridge between the medical evidence and the opinion."  (Tr. 29.)  He explained that the record

shows that Hann "has been conservatively treated and had improvement with medication and surgery." *Id.*   Because Dr. Moyers' opinion was not "supported by or consistent with the medical and non-medical evidence of record," the ALJ found it to be unpersuasive.   *Id.*

Hann contends that the ALJ erred in failing to give Dr. Moyers' opinion any weight. Defendant responds that Hann's argument is based upon a prior version of the regulations governing the evaluation of medical evidence.   Defendant contends that the ALJ complied with the applicable regulations, which provide that the ALJ does not give any specific evidentiary weight to medical opinions.   Hann did not reply to Defendant's argument.

For claims like Hann's filed on or after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c.   These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."   20 C.F.R. § 404.1520c(a).   Rather, an ALJ is to consider the persuasiveness of any opinion or prior administrative medical finding using the same five factors: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).   However, the rules make clear that supportability and consistency are the "most important factors," and therefore, an ALJ must explain how he considered these factors in the decision.   20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain how he considered the remaining factors.  *Id.* *See Brian O v. Comm'r of Soc. Sec.*, No. 1:19-CV-983-ATB, 2020 WL 3077009, at *4

(N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'"   (alterations omitted)).

Here, the ALJ properly considered the medical opinions, including that of Dr. Moyers, in compliance with the new regulations.   (Tr. 28-29.)

Hann saw Dr. Moyers regularly at Cape Family Practice for treatment of her back pain and other various impairments from August 2014 through August 2017.   Hann consistently reported back pain that radiated down into her legs.   From September 2015 to June 2017, she had some tender points and pain with range of motion, decreased flexion and extension, decreased range of motion in the knees, swelling and stiffness in multiple joints, and decreased tactile discrimination in her feet.   (Tr. 647, 746, 755, 758, 764, 768, 770, 776, 787, 795, 803, 807, 811, 819, 828, 832.)   Dr. Moyers noted paravertebral muscle spasms of the lumbar spine on some examinations.   (Tr. 755, 758.)   As previously discussed, however, Hann's motor examinations were normal, and she had a negative straight leg raise test.   Dr. Moyers prescribed Norco[3]  for pain relief, which Hann reported was "working well" in May and July of 2016.   (Tr. 763, 769.)

In October 2017, Hann underwent an MRI of the lumbar spine, which revealed the following findings: mild L3-L4, moderate to severe L4-L5, and mild L5-S1 central spinal canal stenosis, and marked asymmetric left L4-L5 lateral recess stenosis; mild bilateral at L3-L4,

---

[3]Norco is an opioid pain reliever indicated for the treatment of moderate to severe pain.
*See* WebMD, http://www.webmd.com/drugs (last visited March 5, 2021).

severe bilateral L4-L5, moderate left L5-S1, and mild to moderate right L5-S1 foraminal stenosis; a four-millimeter degenerative anterolisthesis of L4-L5 and trace retrolisthesis of L3-L4; and multilevel hypertrophic facet arthropathy and small L4-L5 facet joint effusions.  (Tr. 907, 1387.)   Hann saw Joel Ray, M.D., for a neurosurgical consultation in December 2017.  (Tr. 1109.)   She complained of pain, numbness, and burning that extended down her posterior legs bilaterally.  (Tr. 1110.)   Dr. Moyers referred Hann to a pain management clinic, but Hann reported that this did not help her pain.  (Tr. 1040.)   Dr. Ray noted positive straight leg raise testing bilaterally at 40 degrees.  (Tr. 1041.)   He prescribed additional pain management and physical therapy.  *Id.*   In April 2018, Dr. Ray indicated that lumbar injections provided no relief, and recommended surgery.  (Tr. 1189.)   Hann underwent a lumbar 4-5 segmental decompression and fusion on May 1, 2018.  (Tr. 898-907.)   Hann's insurance lapsed after her surgery and she was unable to access physical therapy or follow-up treatment.  (Tr. 1388.)   In August 2018, a nurse practitioner at St. Francis Medical Center noted that Hann had "done very well despite these obstacles."  *Id.*   Hann complained of only an "occasional dull, achy back pain," but denied any radicular symptoms.  *Id.*   It was recommended that Hann try aquatic therapy through a community action program.  *Id.*   There are no additional treatment notes dated after August 2018.

Dr. Moyers authored her opinion regarding Hann's physical limitations on February 8, 2019. (Tr. 1648-1651.)   Dr. Moyers had last seen and examined Hann in August 2017, prior to Hann's back surgery.   Significantly, in Hann's most recent treatment notes by FNP Rebecca Williamson—in August 2018—Hann reported her radicular pain had resolved and she experienced only an occasional dull, achy pain.  (Tr. 1388.)   In her opinion, Dr. Moyers indicated that the only objective sign Hann exhibited was muscle spasm.  (Tr. 1648.)

The ALJ found that Dr. Moyers' opinion was unpersuasive because it was not supported by the evidence of record and was inconsistent with Hann's conservative treatment followed by improvement with surgery.  (Tr. 29.)   The undersigned finds that the ALJ properly applied the relevant regulations in evaluating Dr. Moyers' opinion.   Pursuant to the new regulations, the ALJ did not assign a weight to Dr. Moyers' opinion, but instead evaluated the persuasiveness of the opinion focusing on its supportability and consistency with the record.   Dr. Moyers expressed the opinion that Hann had disabling limitations but did not explain the findings upon which she relied or address the improvement in Hann's symptoms following surgery.   For these reasons, the ALJ did not err in finding Dr. Moyers' opinion unpersuasive.

The ALJ next discussed the opinion (Tr. 110-24) of state agency consultant Kevin Threlkeld, M.D.   The new regulations require the ALJ to consider the opinions of state agency medical consultants because they are highly qualified and experts in Social Security disability evaluation.  *See* 20 C.F.R. § 404.1513a.   On July 3, 2017, Dr. Threlkeld reviewed Hann's medical records and self-reported daily activities and expressed the opinion that Hann was capable of performing light exertion work with occasional climbing of ladders, ropes scaffolds, stairs, and ramps; frequent stooping; and should avoid concentrated exposure to hazards.   (Tr. 117-18.)   The ALJ stated that evidence has been added since Dr. Threlkeld provided his opinion, including the October 2017 MRI and Hann's back surgery.   (Tr. 28.)   The ALJ found that this new evidence supported additional limitations to Hann's RFC.  *Id.*   Thus, the ALJ found Dr. Threlkeld's opinion was "not persuasive."  *Id.*

In determining Hann's RFC, the ALJ also discussed Hann's statements regarding her activities of daily living.   The ALJ stated that Hann was able to perform most of her personal care needs, do some household chores, shop, drive, prepare meals, ride her stationary and

outdoor bike, work outside in her yard, make soap, socialize with friends and family, and swim during the relevant period.  (Tr. 25; *see* Tr. 71, 725, 734, 735, 1002, 1306.)  The ALJ noted Hann reported to a medical provider that she was able to ride her bike up to twenty miles at times.  (Tr. 25, 725.)

      The ALJ concluded that Hann had the physical RFC to perform sedentary work with the following additional limitations: no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs, balancing, kneeling, crouching, and crawling; stooping limited to forty-five degrees of flexion; must avoid all concentrated exposure to hazards such as dangerous moving machinery and unprotected heights; and must be permitted to alternate position between sitting and standing once per hour for two minutes at a time.  (Tr. 21-22.)

      The ALJ's RFC determination is supported by substantial evidence in the record as a whole.  In his discretion, the ALJ made an RFC finding that did not precisely reflect any of the medical opinions of record.  *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).

      As discussed above, the ALJ properly evaluated the medical opinion evidence.  He found Dr. Moyers' opinion was unsupported and was inconsistent with Hann's improvement following surgery.  The ALJ's determination is supported by the opinion of Dr. Threlkeld, who found Hann was capable of performing a range of light work.  The ALJ nonetheless credited Hann's allegations in imposing a significantly more restricted RFC.

      The ALJ also properly considered Hann's ability to perform significant daily activities despite her allegations of disabling pain.  A restriction to a limited range of sedentary work adequately accounts for Hann's continued back pain and limitations following surgery.  Hann has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of March, 2021.